FOR THE UNITED STATES DISTRICT COURT
IN THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL DOCKET NO.: 5:07CV109-V

| | |
|---|---|
| EDIE BALISTRIERI,  )<br>    Plaintiff / Counter-Defendant,  )<br>  )<br>v.  )<br>  )<br>AMERICAN HOME ASSURANCE  )<br>COMPANY,  )<br>    Defendant / Counter-Plaintiff.  )<br>  ) | **ORDER** |

**AHAC's Counterclaim & Fourth Affirmative Defense**

**THIS MATTER** is before the Court on Plaintiff's Motion for Partial Summary Judgment, filed December 18, 2008. (Documents ##56, 57). The instant Memorandum and Order only addresses AHAC's Fourth Affirmative Defense and Counterclaim. With respect to Defendant AHAC's Third, Fifth, and Sixth Affirmative Defenses, AHAC concedes that these defenses only applied to L. Balistrieri (who is no longer a party) and that summary judgment is appropriate for that reason.

**I. Background**

In AHAC's Fourth Affirmative Defense and Counterclaim, AHAC contends that Plaintiff intentionally misrepresented the "monthly payment necessary to maintain an existing primary mortgage" in order to procure a larger insurance payment than the Plaintiff was entitled to receive under the terms of her insurance policy ("Policy"). Plaintiff now seeks summary judgment in her favor on this issue.

Plaintiff contends that no genuine issue of material fact exists with respect to AHAC's Fourth

1

Affirmative Defense and Counterclaim seeking a Declaration of Fraud. The gist of Plaintiff's summary judgment argument is that no reasonable trier of fact could find that she engaged in any misrepresentation or fraud. More specifically, because Plaintiff asserts she had as many as four different payment options pursuant to the Adjustable Rate Mortgage Loan terms, any of which arguably satisfy the Mortgage Payment Clause language, the elements of fraud cannot be made. (*See* Pl.'s 12/18/08 Aff. ¶20; Ollier Dep. at 10-12.)

The relevant contract provision within Section "D.1.b." of the Policy Endorsement provides "Extended Enhancement Coverage," to the insured for:

> The **monthly payment necessary to maintain an existing primary mortgage** with the mortgagee named in this policy while that part of the "residence premises" where you reside is not fit to live in.
>
> We will not pay:
> (1) more than the monthly payment at the time of the loss; and
> (2) for more than a period of twelve months.

(Policy Endorsement, Section I - Property Coverage, D.1.b. at 2.)(*emphasis provided*). The Policy does not define "monthly payment" or "monthly payment necessary to maintain an existing primary mortgage."

The terms of the promissory note secured by the deed of trust on Plaintiff's house provided for four different monthly repayment options. Payment Option I was the minimum amount required to prevent default. This option required payment of $6,883.05 and resulted in negative amortization.[1] Payment Option II was a payment equivalent to the monthly interest on the loan. This payment option would keep the principal at a steady amount. Payment Option III provided for repayment of

---

[1] Negative amortization means that any unpaid interest "will be added to the principal loan balance and will accrue additional interest." (Ollier Dep. at 8.)

principal and interest in the amount necessary to repay the loan by the end of the term. Payment Option IV provided for repayment of the loan within a fifteen year term.

Laura Ann Ollier ("Ollier"), the corporate representative of Washington Mutual, which provided the loan to the Balistrieris, similarly testified in her deposition that the Mortgage Loan Disclosure Statement allowed Plaintiff to choose from the different monthly payment options. (Ollier Dep. at 4, 6-7.) In addition, Ollier confirmed that the $6,883.05 figure cited by Defendant AHAC is a negative amortization payment as opposed to a payment of the principal and interest due under the loan. (Ollier Dep. at 3, 8-10.) Ollier further testified that under the terms of the loan as of January 2007, the principal and interest payment described as Option III was $12,362.11. Id.

According to Plaintiff's deposition testimony, prior to submitting the insurance claim, the Balistrieris elected to pay "different figures at different times," with at least one such payment being the minimum amount of $6,883.05.[2] (Pl.'s Dep. at 141-42.) Plaintiff denies any intent to deceive. (Pl.'s 12/18/08 Aff. ¶27.) However, Ollier testified that Plaintiffs paid the minimum amount from October 2006 through January 2007. (Ollier Dep. at 17.)

Plaintiff initially sought to recover under the third of the four payment options under the terms of the loan.[3] Consequently, Plaintiff represented in answers to interrogatories (Interrogatory #9) that the coverage being sought pursuant to the Mortgage Payment Clause provision was based upon a

---

[2] As noted, *supra*, there is a cap on coverage benefits that exceed the "monthly payment at the time of loss." According to AHAC, the minimum payment figure of $6,883.05 was the current payment amount as of September 2008. (Counterclaim ¶15.)

[3] Plaintiff recently changed her position, explaining that Payment Option II, an interest only payment that maintains the *status quo* but does not result in an increase in principal, is the option that best satisfies the phrase "monthly payment necessary to maintain the mortgage." (Pl.'s 12-18-08 Aff. ¶20-22.) On December 17, 2008, Plaintiff supplemented her interrogatory answers accordingly. (Pl.'s 12/18/08 Aff. ¶24; MSJ at 15; MSJ Exh. C).

3

monthly principal and interest amount of $12,869.14.[4] (Pl.'s Answer & Affirmative Defense ¶22.) Defendant AHAC eventually denied this aspect of Plaintiff's insurance claim and refused to pay. (Pl.'s Reply at 16.)

According to Defendant AHAC, the amount due and owing on a monthly basis was only $6,883.05, the minimum amount necessary to keep the mortgage out of foreclosure.[5] (Countercl. ¶15.) Accordingly, AHAC seeks a declaratory judgment that Plaintiff's claim for $12,869.14 is a fraudulent misrepresentation that voids all coverage under the terms of the Policy. (Countercl. ¶¶13, 16-17, 19.)

AHAC's Fourth Affirmative Defense and Counterclaim are premised upon the following bar to coverage:

> We provide coverage to no "insured" under this policy, if, whether before or after a loss, an insured has:
>
> 1. Intentionally concealed or misrepresented any material fact or circumstance;
> 2. Engaged in fraudulent conduct; or
> 3. Made false statements;
> relating to insurance.

(Policy, Section I - Conditions, R at 19.) Defendant AHAC has the burden of proof on its Counterclaim. *See* Bryant v. Nationwide Mutual Ins. Co., 329 S.E.2d 333, 338-39 (N.C. 1985).

## II. Standard

---

[4]In terms of the discrepancy between $12,869.14 and $12,362.11, Plaintiff claims she made a mistake in relying on a previous payment statement identifying a different payment amount than what was due in January 2007. (Pl.'s 12/18/08 Aff. ¶23).

[5] It is undisputed that, of the four different payment options Plaintiff refers to as available to her under the terms of the loan, the $6,883.05 option is the lowest monthly amount Washington Mutual would accept in order to avoid default. (Ollier Dep. at 10.)

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, 477 U.S. 242 (1986); Celotex Corp. v. Catrett, 477 U.S. 317 (1986). A genuine issue exists only if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248. In conducting its analysis, the Court views the evidence in the light most favorable to the non-moving party. Celotex Corp., 477 U.S. at 325.

According to the Supreme Court, "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we [the court] think it should be interpreted in a way that allows it to accomplish this purpose." Celotex Corp., 477 U.S. at 323-324 (Rule 56 does not require that the moving party support its motion with affidavits negating the opponent's claims); *See also* Cray Comm'ns, Inc. v. Novatel Computer Syss., Inc., 33 F.3d 390, 393-395 (4th Cir. 1994).

### III. Discussion

**A. The Mortgage Payment Clause Is Ambiguous**

The Court first considers whether the Mortgage Payment Clause is ambiguous or not. Pursuant to North Carolina law:

> The interpretation of language used in an insurance policy is a question of law, governed by well-established rules of construction. The policy is subject to judicial construction only where the language used in the policy is ambiguous and reasonably susceptible to more than one interpretation. In such cases, the policy must be construed in favor of coverage and against the insurer; however, if the language of the policy is clear and unambiguous, the court must enforce the contract as it is written. Ambiguity in the terms of the policy is not established simply because the parties

5

contend for differing meanings to be given to the language. Non-technical words are to be given their meaning in ordinary speech unless it is clear that the parties intended the words to have a specific technical meaning.

North Carolina Farm Bureau Mutual Ins. Co. v. Mizell, 530 S.E.2d 93, 95 (N.C. App. 2000) (*internal citations omitted*).

In an effort to demonstrate that the Policy language is unambiguous, AHAC supplies the Court with a dictionary definition of "maintain." The word "maintain" means "to keep in an existing state (as of repair, efficiency, or validity)." (Def.'s Resp. at 10.) (*citing* Merriam-Webster's Collegiate Dictionary, 10th Edition (1996)). However, AHAC fails to adequately address the phrase as a whole, namely, "monthly payment necessary to maintain an existing primary mortgage." AHAC asks the Court not to consider extrinsic evidence (*i.e.*, the deposition testimony of Washington Mutual's corporate representative Laura Ollier) in interpreting the Policy.[6] Id.

The language of the policy is ambiguous as applied to the facts of this case. Given the four different repayment options contained in the Note,[7] the "monthly payment necessary to maintain . . . [the] mortgage" is subject to several possible interpretations. First, "maintain" may simply mean the minimum amount necessary to prevent foreclosure, as argued by AHAC and as described in Payment Option I. Second, "maintain" may mean paying the full amount of interest accrued each

---

[6] "Where a policy is not ambiguous, the court must strictly construe the policy without resort to extrinsic evidence." State Auto Property and Casualty Ins. Co. v. Rankin, 583 S.E.2d 426, 2003 WL 21791834 (N.C.App.) (*citing* Metric Constructors, Inc. v. Industrial Risk Insurers, 401 S.E.2d 126 (1991)).

[7] AHAC's assertion that the court should not look to the Note to determine what monthly payment is necessary to "maintain" the mortgage is incorrect. North Carolina law is clear that "where a note and a deed of trust are executed simultaneously and each contains references to the other, the documents are to be considered as one instrument and are to be read and construed as such to determine the intent of the parties." In re Sutton Investments, Inc., 266 S.E.2d 686, 689 (N.C. Ct. App. 1980) (citation omitted). This fact was also recognized by Washington Mutual's representative in her deposition testimony. (Ollier Dep. at 15, 23.)

month in order to prevent the principal owed on the Note from increasing and to maintain the balance of the mortgage, which is the amount Plaintiff now contends is owed by AHAC and which is described in Payment Option II. Finally, "maintain" may mean to make payments as necessary under the plan to fulfill repayment of the principal and interest in the period of time prescribed in the Note, as contemplated by Payment Option III and as originally argued by Plaintiff. The court also notes that its determination that the language at issue in this case is ambiguous is supported by the testimony of Washington Mutual's representative, who stated that any of these payment options would in her opinion be reasonably interpreted as "maintaining" the mortgage.

Although it is the duty of the court to construe unambiguous contracts as a matter of law, interpretation of contractual language that is subject to more than one meaning is the province of the jury. Dockery v. Quality Plastic Molding, Inc., 547 S.E.2d 850, 852 (N.C. Ct. App. 2000). Because the court has determined that the contract in this case is ambiguous on its face, interpretation of the contract will be a matter for the jury to decide at trial.

### B. No Genuine Issue Of Material Fact Exists Regarding Concealment Or Fraud

In light of the ambiguity found within the Policy, the Court finds that AHAC cannot succeed on its Fourth Affirmative Defense or Counterclaim. In order to prevail on either of these issues, AHAC would need to demonstrate that Plaintiff knowingly and willfully made statements which were false and material. *See* Webster Enterprises, Inc. v. Selective Ins. Co. of the Southeast, 479 S.E.2d 243 (1997); Bryant Nationwide Mut. Fire Ins. Co., 329 S.E.2d 333, 338 (1985). This is true even where, as here, the claim for misrepresentation is contractual in nature and not based on common law fraud.

While intent and materiality are generally classic jury questions, these issues are not

dispositive given the flexibility provided Plaintiff by the terms of the loan. Since the court has determined that the language of the Policy was ambiguous, Plaintiff's claim for insurance coverage of Payment Option III was necessarily reasonable and cannot be categorized as an intentional misrepresentation. Thus, AHAC's Fourth Affirmative Defense and Counterclaim fail as a matter of law.

In addition, and regardless of any ambiguity in the insurance contract, Plaintiff's representation that the insurance company owed her compensation for a monthly mortgage payment of $12, 869.14 does not qualify as an intentional misrepresentation because of the context within which this answer was given. The relevant portion of AHAC's ninth interrogatory asked the following question: "Please state the dollar amount of the loss claimed by you, the method used to compute such loss, and all . . . documents . . . which will support . . . the loss claimed owed to you by AMERICAN HOME ASSURANCE COMPANY." In her response, Plaintiff stated, "The monthly principal and interest payments based on the remaining scheduled term of the loan is $12,869.14." This response is not an intentional misrepresentation because the statement is factually true. $12, 362.11 were due each month to complete repayment by the end of the scheduled term.[8]

Furthermore, Plaintiff was free to claim this amount as the amount owed under the policy. While AHAC was also free to disagree with this interpretation, this does not mean that Plaintiff's claim was a willful misrepresentation or was made in bad faith, especially where AHAC has provided no evidence that Plaintiff knew that the insurance policy would not cover Payment Option III.

---

[8] As noted previously, Plaintiff claims the discrepancy between $12,869.14 and $12,362.11 was the result of her reliance on an older payment statement that identified a different payment amount than what was due in January 2007. (Pl.'s 12/18/08 Aff. ¶23). There is no evidence that this misrepresentation was intentional, and the court further finds that the difference between the two amounts is not material.

8

AHAC's interrogatory did not ask Plaintiff to name the last monthly payment made on the mortgage; it only asked the amount Plaintiff claimed the policy would cover. Plaintiff's good faith assertion that the policy should cover Payment Option III is therefore not an intentional misrepresentation where latent contractual ambiguity renders Plaintiff's claimed amount reasonable. See Webster Enterprises, Inc. v. Selective Ins. Co. of the Southeast, 479 S.E.2d 243, 248 (N.C. App. 1997) (holding that "unless the insured's misrepresentations cannot in any way be seen as innocent," judgment as a matter of law in favor of an insurance company on this issue is not appropriate).

## IV. Order

**IT IS, THEREFORE, ORDERED THAT:**

1) Summary judgment is hereby **GRANTED** in favor of Plaintiff E. Balistrieri with respect to Defendant's Third, Fourth, Fifth, and Sixth Affirmative Defenses, and with respect to Defendant's Counterclaim; and

2) The amount owed under the Policy, if any, as the "monthly payment necessary to maintain an existing primary mortgage" is left for the determination of the jury at trial.

Signed: April 8, 2009

Richard L. Voorhees
United States District Judge