FOR THE UNITED STATES DISTRICT COURT
IN THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL DOCKET NO.: 5:07CV109-V

| | |
|---|---|
| EDIE BALESTRIERI, )<br>    Plaintiff / Counter-Defendant, )<br>)<br>v. )<br>)<br>AMERICAN HOME ASSURANCE )<br>COMPANY, )<br>    Defendant / Counter-Plaintiff. )<br>) | **O R D E R** |

This matter is before the Court on Plaintiff Edie Balestrieri's ("E. Balestrieri") Motion to Set Aside the Verdict and for a New Trial. (Document #185)

This matter was tried before a jury in April 2009. The jury found in favor of the Defendant American Home Insurance Company ("AHAC") and determined that in resolving the insurance claim AHAC did not breach its contractual obligation to Plaintiff.[1] E. Balestrieri now asks the Court to set aside the jury's verdict with respect to Count One (alleging breach of

---

[1] The Verdict Form, Interrogatory Number 1, both answered by the jury in the NEGATIVE, read:

    1. Did Plaintiff EDIE BALESTRIERI establish, by a preponderance of the evidence, that the Defendant, AMERICAN HOME ASSURANCE COMPANY, breached the insurance contract by not paying the Plaintiff's claim(s) for:

    a.    the actual cash value of the damage to the Home (i.e., building loss) in the proper amount?

            **Answer:**    Yes:_____ No:_____

    b.    the loss of the primary mortgage expense?

            **Answer:**    Yes:_____ No:_____

1

contract) on two different theories – underpayment for property / building loss and wrongful denial of coverage under the mortgage expense provision of the Policy.

Plaintiff's motion is governed by Rule 59(a) of the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 59(a). Rule 59(a) provides that a motion for new trial is appropriate where:

> "the verdict is against the clear weight of the evidence, or is based upon evidence which is false, or will result in a miscarriage of justice."

Porter v. Porter, 2008 WL 926632, *5 (W.D.N.C. April 4, 2008); Stamathis v. Flying J, Inc., 389 F.3d 429, 436 (4th Cir.2004). "In considering a motion for a new trial, a trial judge may weigh the evidence and consider the credibility of the witnesses, and if he finds the verdict is against the clear weight of the evidence, ... or will result in a miscarriage of justice, he must set aside the verdict, even if supported by substantial evidence, and grant a new trial." Porter, 2008 WL 926632, *5 (*quoting* Chesapeake Paper Products Co. v. Stone & Webster Eng'g Corp., 51 F.3d 1229, 1237 (4th Cir.1995)). Stated differently, the Court must find that the jury's decision was "so inadequately supported by the record" as to be considered to be an arbitrary decision and objectively reasonable. Call v. Polk, 454 F.Supp.2d 475, 479 (W.D.N.C. 2006).

**A. Breach of Contract – Actual Cash Value**

Plaintiff's first legal argument concerns the amount of recovery for property or building loss. More specifically, Plaintiff seeks a new trial based upon the contention that Defendant AHAC underpaid her for the loss of the Blowing Rock property destroyed by fire. At the time of trial, the parties stipulated that E. Balestrieri had already been paid the sum of $933,429.57 for the loss consistent with AHAC's estimate of the house's Actual Cash Value. Plaintiff contends that the clear weight of the evidence demonstrated her entitlement to approximately $400,000 to

$500,000 more than what AHAC already paid. (*See* Pl.'s Mem. In Supp., ¶¶36, 37)

On this issue, the jury was instructed in part:

> The terms "actual cash value," "fair market value," and "market value" are generally synonymous.
> The proper test of actual cash value in a particular case depends upon the nature of the property insured, its condition, and other circumstances existing at the time of the loss.
> The tests generally used to determine actual cash value are the market value of the property, the reproduction or replacement cost of the property, and the broad evidence rule. Under the broad evidence rule, any evidence logically tending to the formation of a correct estimate of the value of the insured property at the time of the loss, including evidence of the fair market value and the replacement cost of the property, may be considered.
>
> ***
>
> The actual cash value of the replacement cost of the damage to the home is the real value of the property in money. The actual cash value is not the cost to replace or rebuild the home. In determining actual cash value you may consider the cost of replacement or repair, depreciation (meaning the wearing out or obsolescence of the property, if you find that the useful life of the property may be estimated with reasonable certainty), the opinions as to value of any qualified witnesses, the fair market value of the replacement costs, and any other factor in evidence which you find has a logical tendency toward correct estimation of value. You should award such amount, if anything, as will fairly compensate the Plaintiff for whatever loss she has suffered as a result of the fire loss.

*See* Surratt v. Grain Dealers Mut. Ins. Co., 328 S.E.2d 16, 19-20 (1985); Kinlaw v. North Carolina Farm Bureau Mut. Ins. Co., 389 S.E.2d 840, 844 (1990); Fowler BarnhamFord v. Ins. Co., 45 N.C. App. 625 (1980).

Consistent with the broad evidence rule, and in light of the numerous and varied factors relevant to the determination of actual cash value, the parties were permitted to introduce opinion testimony from multiple individuals with expertise in areas such as construction, insurance loss, appraisal, etc. As one might expect, there was conflicting evidence presented regarding the

condition of the remaining structure, depreciation, the scope of the work that would have been necessary to replace or rebuild the home, and the replacement cost value. According to Plaintiff, eight out of ten witnesses (or authors of reports) provided evidence tending to show that she was underpaid. (Pl.'s Mem. In Supp., ¶39) Plaintiff's legal argument simply does not (and cannot) take into account the jurors' independent and collective evaluation as to the qualifications of the witnesses, the credibility of the witnesses, and the weight to attribute to the witnesses' testimony or other items of evidence.[2]

Defendant AHAC's corporate representative testified that AHAC's Actual Cash Value figure was based upon the evaluation of Mr. Barry Schoch ("Schoch"), with Property Loss Specialists — $1,013,087.76 [replacement cost value] – $79,658.39 [depreciation at approximately 8%] = $933,429.37 [actual cash value]. (Pl.'s Exh. 260)  This is the same mathematical formula proposed and adopted by Plaintiff's own purported experts, except that Schoch's calculation applied a lesser rate of depreciation than the 10% figure suggested by Plaintiff. AHAC also presented evidence from another source, Mr. Terry Lentz, who estimated the replacement cost value to be $1,069,350. Mr. Lentz's replacement cost figure with a 10% depreciation results in a lower actual cash value figure than the award actually paid Plaintiff. (*See* Def.'s Mem. In Opp'n, at 5-6.) AHAC contends that its damages figures, while less than the amount sought by Plaintiff, are within three (3) to five (5) percent of what Plaintiff suggests is the true actual cash value of the Blowing Rock property.

---

[2] The Court notes that while Plaintiff called a greater number of witnesses on this topic, several of Plaintiff's witnesses either didn't have adequate information to form and articulate a persuasive opinion, or were arguably lacking in the necessary expertise.

The Court, therefore, finds that the jury's verdict is not against the clear weight of the evidence as to Actual Cash Value.

**B. Breach of Contract – Mortgage Expense Coverage**

At trial, Plaintiff pursued recovery for mortgage expenses associated with the inability to use her "residence premises" due to the fire loss. The Mortgage Expense clause of the Policy provides coverage as follows:

> The monthly payment necessary to maintain an existing primary mortgage with the mortgagee named in this policy while that part of the "residence premises" where you reside is not fit to live in.
>
> We will not pay:
> (1) more than the monthly payment at the time of the loss; and
> (2) for more than a period of twelve months.
>
> Payment under a. and b. above will be made for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

(Policy at 2, ¶D.1.b)   The Policy defined "residence premises" as ***the one family dwelling where you reside*** ... and which is shown as the "residence premises" in the Declarations.   The Policy does not define "where you reside" or "reside."   The AIG Declarations identified the Blowing Rock property as the "residence premises" so that portion of the Policy definition was satisfied (Pl.'s Exh. 67)

Plaintiff contends that because the insurance policy must be construed in favor of the policyholder and against the insurance company, the Court should define the term "reside" and the phrase "where you reside" as broadly as allowed under North Carolina law.[3] The jury was

---

[3] Both parties appear to acknowledge in their respective post-trial filings that any legal question as to interpretation of the Policy language should have been raised at summary judgment. Because it was not, the Court, in fact, provided the jury with a liberal construction of the term "reside." In any event, the

5

instructed consistent with North Carolina law:

> In this case you will be called upon to determine whether Plaintiff, Edie Balestrieri, resided in the Blowing Rock House prior to the fire loss.
> The words "'resident," "residence" and "residing" have no precise, technical and fixed meaning applicable to all cases. "Residence" has many shades of meaning, from mere temporary presence to the most permanent abode. It is difficult to give an exact or even satisfactory definition of the term "resident," as the term is flexible, elastic, slippery and somewhat ambiguous.
> Therefore, a person may be a resident of more than one dwelling.
> In determining whether a person in a particular case is a resident of a particular house, the intent of that person is material to the question.

See Great Am. Ins. Co. v. Allstate Ins. Co., 338 S.E.2d 145, 147 (N.C. App. 1986); Jamestown Mut. Ins. Co. v. Nationwide Mut. Ins. Co., 146 S.E.2d 410 (1966); Davis v. Maryland Casualty Co., 331 S.E.2d 744, 747 (N.C. App. 1985).

Again, the jury was required to make a factual finding as to E. Balestrieri's "residence premises." The evidence at trial established that Plaintiff was separated from her husband and had not physically resided in the Blowing Rock home since at least November 7, 2006. (Pl.'s Exh. 67) There was conflicting evidence concerning the permanency of the separation and Plaintiff's departure to the couple's other residence in Delray Beach, Florida.[4] Plaintiff contended at trial that she intended to reconcile with her husband and return to North Carolina as she was responsible for the books for the couple's restaurant. Plaintiff testified that her "home office" was left intact at the Blowing Rock house, that she maintained responsibility for the

---

parties agreed to the Court's instructions on the law.as to this issue.

[4] Significantly, during her Examination Under Oath, Plaintiff represented that when she left North Carolina, she took all of her personal belongings with her with the exception of furnishings. Plaintiff recanted that statement after AHAC denied coverage under the Mortgage Expense provision. It is the Court's view that Plaintiff's testimony, as a whole, was less than credible.

mortgage, and regular maintenance. Plaintiff testified that her winter clothes, pictures, CDs, files, furniture, and certain other personal items were in the Blowing Rock house at the time of the loss. Plaintiff further testified that her daughter was registered for school in North Carolina, and that the family's medical providers were also in North Carolina.

Notwithstanding Plaintiff's evidence, there was also evidence presented that revealed that the Balestrieris had contemplated selling the property, that Plaintiff maintained her voter registration in Florida, that her federal income taxes showed her residence as the State of Florida, that her Homestead Exemption was likewise filed in the State of Florida, and that she had never paid state income taxes in North Carolina. E. Balestrieri contended that she resided in both locations.[5] The jury simply did not agree with Plaintiff's view of the evidence.

For these reasons, the Court finds that the verdict in this case denying Plaintiff recovery under the mortgage expense clause was not against the clear weight of the evidence.

**IT IS, THEREFORE ORDERED THAT** Plaintiff's motion is **DENIED**. The Deputy Clerk shall enter Judgment in favor of Defendant consistent with the jury's verdict.

Signed: April 15, 2010

Richard L. Voorhees
United States District Judge

---

[5] Plaintiff essentially asks for a construction that would assign meaning inclusive of a *former* "residence premises."